UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHAD WINDHAM MITCHELL, | Case No. 3:22-cv-00159-MMD-CSD |
| Plaintiff, | SCREENING ORDER ON SECOND AMENDED COMPLAINT |
| v. | |
| CARSON CITY SHERIFF'S OFFICE, *et al.*, | (ECF No. 23) |
| Defendants. | |

*Pro se* Plaintiff Chad Windham Mitchell, who was formerly detained at the Carson City Sheriff's Detention Facility ("CCDF"),[1] has submitted a second amended civil rights complaint under 42 U.S.C. § 1983 (ECF No. 23 ("SAC")), a motion to supplement (ECF No. 24), and a motion for subpoena duces tecum and discovery (ECF No. 25). The Court denies the motion for subpoena duces tecum and discovery as premature, screens the SAC under 28 U.S.C. § 1915A, and considers the motion to supplement.

I.      SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

_____

[1]According to a notice of change of address, Plaintiff is currently in custody at the Washoe County Detention Facility. (ECF No. 19.)

1    elements: (1) the violation of a right secured by the Constitution or laws of the United

2    States; and (2) that the alleged violation was committed by a person acting under color

3    of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

4        In addition to the screening requirements under § 1915A, under the Prison

5    Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's

6    claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

7    to state a claim on which relief may be granted, or seeks monetary relief against a

8    defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a

9    complaint for failure to state a claim upon which relief can be granted is provided for in

10    Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under

11    § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a

12    court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend

13    the complaint with directions as to curing its deficiencies, unless it is clear from the face

14    of the complaint that the deficiencies could not be cured by amendment. *See Cato v.*

15    *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

16        Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See*

17    *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to

18    state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in

19    support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d

20    756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all

21    allegations of material fact stated in the complaint, and the Court construes them in the

22    light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th

23    Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than

24    formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While

25    the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

26    must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*,

27    550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is

28    insufficient. *See id*.

1    Additionally, a reviewing court should "begin by identifying pleadings [allegations]

2    that, because they are no more than mere conclusions, are not entitled to the assumption

3    of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

4    the framework of a complaint, they must be supported with factual allegations." *Id.* "When

5    there are well-pleaded factual allegations, a court should assume their veracity and then

6    determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

7    whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

8    requires the reviewing court to draw on its judicial experience and common sense." *Id*.

9    Finally, all or part of a complaint filed by an incarcerated person may be dismissed

10   *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This

11   includes claims based on legal conclusions that are untenable (*e.g.*, claims against

12   defendants who are immune from suit or claims of infringement of a legal interest which

13   clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*,

14   fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);

15   *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

16   **II.    SCREENING OF SAC**

17   In the SAC, Plaintiff sues multiple Defendants for events that took place while

18   Plaintiff was a pretrial detainee at CCDF. (ECF No. 23 at 1.) Plaintiff sues Defendants

19   Captain Mays, Sergeant Rivera, Sergeant Bindley, and commissary employee John Doe.

20   (*Id.* at 1-2.) Plaintiff brings two claims and seeks monetary and injunctive relief. (*Id*. at 2-

21   21.)

22   Plaintiff alleges the following. Plaintiff filed a petition for writ of habeas corpus in

23   case number 22OC000601B in the First Judicial District Court of Nevada in and for

24   Carson City ("FJDC") relating to his "conditions of confinement" at CCDF. (*Id*. at 4.)

25   Specifically, Plaintiff's petition related to: "1) denial of legal materials, 2) tampering and

26   interception of 'legal mail,' 3) denial of legal research, 4) . . . exposure to other inmates'

27   'biohazard fluids,' . . . 5) failure to provide for Covid protocols, and 6) inadequate cleaning

28   and sanitation within the facility." (*Id*.) In that case, Plaintiff moved for a court order

1    recognizing his pauper status so that under CCDF policy, CCDF was required to provide

2    him with access to legal materials and copies that he needed to litigate his petition. (*Id*.

3    at 9.) However, Plaintiff's motion was denied because he was unable to provide proof of

4    service to the opposing party, due to (1) only being allowed one envelope by Defendant

5    commissary employee John Doe under CCDF policy and (2) CCDF policy not allowing

6    copies to be made. (*Id*. at 10-11.) Plaintiff's habeas petition was later denied due to

7    Plaintiff's "failure to state [a] claim . . . and failure to provide proof of exhausted remedies."

8    (*Id*. at 11.) Plaintiff alleges that the denial of his petition was the result of CCDF's policy

9    restricting inmates' access to legal research or legal assistance and CCDF's policy

10   disallowing inmates to make copies. (*Id*.) Plaintiff alleges that Defendant Captain Mays is

11   tasked with enforcing these policies. (*Id*. at 3.)

12        In an unrelated case, the state filed criminal charges against Plaintiff in the Second

13   Judicial District Court of Nevada in and for Washoe County ("SJDC") in case number

14   CR18-2118. (*Id*. at 5.) Plaintiff drafted and provided his public defender in that case with

15   a petition for writ of habeas corpus regarding violations of Plaintiff's due process rights

16   that resulted from a detective (1) giving drugs to an informant to give to Plaintiff and (2)

17   arresting Plaintiff for possession of those drugs. (*Id*. at 5-6.) Plaintiff sent a request for

18   envelopes and postage to be able to communicate with his public defender and instruct

19   him to file the proposed petition. (*Id*. at 6.) Defendant Sergeant Rivera responded that

20   "the jail is not your legal team." (*Id*.) Plaintiff then sent a request to commissary for

21   envelopes and postage, but Defendant commissary employee John Doe responded, "not

22   through commissary." (*Id*. at 7.) Because Plaintiff was denied envelopes and postage for

23   his communication with his public defender, Plaintiff's petition for writ of habeas corpus in

24   his criminal case was never filed. (*Id*.) On April 1, 2022, Plaintiff mailed a letter to the

25   SJDC in this same criminal case, but three days later, when Plaintiff received his incoming

26   mail, he found his letter inside a CCDF envelope, indicating that his letter had been

27   opened and was never sent to the SJDC. (*Id*. at 10.)

28

After Plaintiff was able to place an order for postage, envelopes, and pens with commissary, he was at a court proceeding when the items were attempted to be delivered. (*Id.*) Upon Plaintiff's return to CCDF, he was experiencing symptoms of Covid, so he was placed in isolation. (*Id.*) Plaintiff sent several requests for his items to be delivered to him in isolation, but Defendant commissary employee John Doe responded that there were no special deliveries. (*Id.* at 7-8.) Plaintiff filed several more requests and eventually explained that the delay of his items meant he was "unable to file [his] own motions . . . to quash and . . . to fire counsel." (*Id.* at 8.) Defendant Sergeant Rivera told Plaintiff that since Plaintiff was "threatening staff and making allegations," Plaintiff's future requests were going to be "ignored and returned." (*Id.*) Plaintiff alleges that this decree resulted in him being refused CCDF's grievance process. (*Id.* at 19.)

Plaintiff made a request for legal research to file his first amended complaint ("FAC") in this case, but his request was returned with the following explanation: "see whoever is helping [Plaintiff] with [his] case." (*Id.* at 12-13.) Plaintiff alleges that this statement was retaliatory because Plaintiff had "been in their custody for a year and officers know that it [was] a fact [Plaintiff was] doing it [himself]." (*Id.* at 13.) Plaintiff also asked for paper to file his FAC, but Defendant commissary employee John Doe denied the request, stating that "paper is not an indigent item." (*Id.* at 18.) Plaintiff alleges that this refusal was "for no other reason than [his] filing [a] 1983 action," in which Defendant commissary employee John Doe is a named defendant. (*Id.*)

On July 22, 2022, Plaintiff asked Defendant Sergeant Bindley if Plaintiff had received any legal mail, and he was told he had not. (*Id.* at 14.) However, Plaintiff contacted a friend, who informed Plaintiff that the friend had sent mail to Plaintiff, and that the tracker information showed that the mail had been "refused as unwanted." (*Id.*) Plaintiff submitted a request on the issue and told Defendant Sergeant Bindley that the mail was going to be remailed by his friend. (*Id.* at 15.) When the resent mail arrived, it was rejected as being unauthorized, but instead of returning it to the sender under CCDF policy, Defendant Sergeant Bindley held it in the mail area. (*Id.*) Plaintiff submitted many

1   grievances, resulting in Defendant Sergeant Bindley, who knew that the mail contained

2   research for this case, altering the grievance procedure to (1) delay Plaintiff's civil rights

3   complaint, (2) ensure that Plaintiff would be unable to exhaust his remedies, and (3) put

4   Plaintiff "in jeopardy of being subjected to disciplin[e]" for filing too many grievances on

5   the same issue. (*Id*. at 15-16, 18.) Plaintiff also received several pieces of other legal mail

6   regarding this case, but those pieces of mail were inexplicably damaged, opened, and

7   delayed. (*Id*. at 17.) Plaintiff contends that Defendant Sergeant Bindley's actions

8   regarding Plaintiff's mail served "no legitimate penological goal," but were made only "to

9   protect himself and other named defendants from [Plaintiff's] legal actions in this case."

10  (*Id*. at 20.)

11          Based on these allegations, Plaintiff asserts a Fourteenth Amendment claim for

12  denial of access to the courts and a First Amendment claim for retaliation. (*Id.* at 3, 17.)

13          **A.      Fourteenth Amendment: Denial of Access to the Courts**

14          Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*,

15  518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the

16  preparation and filing of meaningful legal papers by providing prisoners with adequate

17  law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*,

18  430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but

19  rather the conferral of a capability—the capability of bringing contemplated challenges to

20  sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is

21  this "capability, rather than the capability of turning pages in a law library, that is the

22  touchstone" of the right of access to the courts. *Id*. at 356-57.

23          To establish a violation of the right of access to the courts, an inmate must

24  establish that he or she has suffered an actual injury, a jurisdictional requirement that

25  flows from the standing doctrine and may not be waived. *Id*. at 349. An "actual injury" is

26  "actual prejudice with respect to contemplated or existing litigation, such as the inability

27  to meet a filing deadline or to present a claim." *Id*. at 348. Thus, "[t]o state a claim that the

28  denial of materials, such as postage or envelopes, violated [an inmate's] right to access

6

1   the courts, there must be a showing that the denial of the materials denied the [inmate]

2   the ability to perfect and pursue legal action, i.e. actual injury to court access." *Jackson*

3   *v. Quick*, Case No. 19-cv-01591, 2020 WL 9601697, at *5 (E.D. Cal. Apr. 16, 2020)

4   (citations omitted). Delays in providing legal materials or assistance that result in actual

5   injury are "not of constitutional significance" if "they are the product of prison regulations

6   reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362. The right

7   of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus

8   proceedings, and § 1983 actions. *Id*. at 353 n.3, 354-55.

9        The Court finds that Plaintiff fails to state a colorable Fourteenth Amendment claim

10  based on denial of access to the courts. Based on Plaintiff's allegations, he was: (1)

11  denied his petition for writ of habeas corpus and his motion for a court order recognizing

12  his pauper status by the FJDC in case number 22OC000601B because he was unable to

13  conduct legal research to substantiate his petition or make copies to prove that he had

14  previously exhausted his remedies and to provide a copy of the motion to the opposing

15  party; (2) denied the opportunity to file a petition for writ of habeas corpus, a motion to

16  quash, and a motion to terminate counsel in his SJDC criminal case because he was

17  unable to communicate with his public defender or get his commissary items while placed

18  in isolation, and (3) unable to get needed legal research materials for his FAC in the

19  instant case.

20       First, Plaintiff fails to allege an actual injury regarding his FJDC case. Because a

21  petition for writ of habeas corpus may not challenge conditions of confinement, which is

22  exactly what Plaintiff contends he attempted to challenge in his petition to the FJDC,

23  Plaintiff's petition for writ of habeas corpus was frivolous. *See Bowen v. Warden*, 686

24  P.2d 250, 250 (Nev. 1984) (stating that "a petition for writ of habeas corpus may challenge

25  the validity of current confinement, but not the conditions thereof"). And because the

26  underlying petition in the FJDC case was frivolous, Plaintiff fails to allege that the denial

27  of his request for pauper status in that same case amounted to an actual injury, given that

28  he does not allege that pauper status would have been recognized after the underlying

7

1   petition was dismissed. Second, because the right of access to the courts is limited to

2   direct criminal appeals, habeas corpus proceedings, and § 1983 actions, Plaintiff's

3   alleged injuries in his pending criminal case in the SJDC are not properly raised in the

4   instant action.[2] *See Lewis*, 518 U.S. at 355 ("Impairment of any *other* litigating capacity

5   [other than attacking a sentence or challenging the conditions of confinement] is simply

6   one of the incidental (and perfectly constitutional) consequences of conviction and

7   incarceration."). Third, because this Court already considered Plaintiff's FAC in this case

8   and is now considering his SAC, Plaintiff fails to allege facts supporting an actual injury

9   concerning this § 1983 action.

10      Because Plaintiff does not adequately allege any actual injury, his denial-of-

11  access-to-the-courts claim is dismissed without prejudice.

12      **B.    First Amendment: Retaliation**

13      Inmates have a First Amendment right to file prison grievances and to pursue civil

14  rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

15  "Without those bedrock constitutional guarantees, inmates would be left with no viable

16  mechanism to remedy prison injustices. And because purely retaliatory actions taken

17  against a prisoner for having exercised those rights necessarily undermine those

18  protections, such actions violate the Constitution quite apart from any underlying

19  misconduct they are designed to shield." *Id*.

20      To state a viable First Amendment retaliation claim in the prison context, a plaintiff

21  must allege: "(1) [a]n assertion that a state actor took some adverse action against an

22  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

23  chilled the inmate's exercise of his [or her] First Amendment rights, and (5) the action did

24  not reasonably advance a legitimate correctional goal." *Id*. at 567-68. For First

25  Amendment retaliation purposes, "protected conduct" does not need to be "tethered to

26  the speech or associational freedoms secured by that Bill of Rights provision." *Blaisdell*

27

28      [2]Notably, Plaintiff may be able to pursue these allegations in a different type of action, potentially a post-conviction petition in state court.

1    *v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013). Instead, "a claim for retaliation can be

2    based upon the theory that the government imposed a burden on the plaintiff, more

3    generally, because he exercise[d] a constitutional right." *Id*. (internal quotation marks

4    omitted). In addition, total chilling is not required to state a retaliation claim; it is enough if

5    an official's acts would chill or silence a person of ordinary firmness from future First

6    Amendment activities. *See Rhodes*, 408 F.3d at 568-69.

7         The Court finds that Plaintiff states a colorable First Amendment retaliation claim

8    against Defendants Sergeant Rivera, commissary employee John Doe, and Sergeant

9    Bindley. First, based on Plaintiff's allegations, in response to Plaintiff's protective conduct

10   of invoking his right to the courts by requesting legal materials—postage and envelopes—

11   from commissary, Defendant Sergeant Rivera took adverse action by ignoring all of

12   Plaintiff's grievances since September 2021. Based on the allegations, this adverse

13   action hindered Plaintiff's access to CCDF's grievance procedure and was not based on

14   any legitimate correctional goal. Second, based on Plaintiff's allegations, in response to

15   Plaintiff's protective conduct of filing this action, Defendant commissary employee John

16   Doe took adverse action by unreasonably denying Plaintiff's request for paper to complete

17   his FAC. And based on the allegations, this adverse action meant that Plaintiff was forced

18   to obtain paper by trading food with other inmates and was not based on any legitimate

19   correctional goal. Third, based on Plaintiff's allegations, in response to Plaintiff's

20   protective conduct of filing this action, Defendant Sergeant Bindley took adverse action

21   by withholding Plaintiff's mail containing research for the instant case, opening Plaintiff's

22   legal mail, and altering CCDF's grievance procedure. And based on the allegations, these

23   actions frustrated Plaintiff's ability to litigate his various cases and were not based on any

24   legitimate correctional goal.

25        However, the Court finds that Plaintiff fails to state a colorable First Amendment

26   retaliation claim against Defendant Captain Mays. Plaintiff's only allegation against

27   Defendant Captain Mays is that he had "direct knowledge" of the retaliations. (ECF No.

28   23 at 5.) Plaintiff provides no specific allegations demonstrating that Defendant Captain

1 | Mays was on notice prior to or during the retaliatory actions and acquiesced to the other

2 | Defendants' unconstitutional actions. *See Iqbal*, 556 U.S. at 676; *Hydrick v. Hunter*, 669

3 | F.3d 937, 942 (9th Cir. 2012) ("The absence of specifics is significant because, to

4 | establish individual liability under 42 U.S.C. § 1983, a plaintiff must plead that each

5 | Government-official defendant, through the official's own individual actions, has violated

6 | the Constitution."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (stating that a

7 | defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation

8 | by the defendant"); *cf. OSU Student Alliance v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012)

9 | (concluding that "allegations of facts that demonstrate an immediate supervisor knew

10 | about the subordinate violation another's federal constitutional right to free speech, and

11 | acquiescence in that violation, suffice to state free speech violations").

12 |       Plaintiff's First Amendment retaliation claim will proceed against Defendants

13 | Sergeant Rivera, commissary employee John Doe when Plaintiff learns of his identity,[3]

14 | and Sergeant Bindley.

15 | **III.   MOTION TO SUPPLEMENT**

16 |       This Court previously gave Plaintiff leave to amend, but it did "not grant him leave

17 | to amend in any way he sees fit." (ECF No. 16 at 12.) Plaintiff moves to supplement his

18 | SAC with an additional claim regarding the opening of his outgoing mail, explaining that

19 | he had not previously recognized this claim given his lack of legal resources. (ECF No.

20 | 24.) The Court construes Plaintiff's motion as a motion to amend his pleading under Rule

21 | 15(a) of the Federal Rules of Civil Procedure. This Court balances five factors when

22 | considering a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the

23 | opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has

24 | previously amended his complaint. *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th

25 |

26 |       [3]Although the use of "Doe" to identify a defendant is not favored, flexibility is
allowed in some cases where the identity of the parties will not be known prior to filing a

27 | complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*,
629 F.2d 637, 642 (9th Cir. 1980). If the true identity of the Doe Defendant comes to light

28 | during discovery, Plaintiff may move to substitute the true name of the Doe Defendant to
assert claims against the Doe Defendant at that time.

1    Cir. 2014). Given that (1) this Court must "freely give leave when justice so requires," Fed.

2    R. Civ. P. 15(a)(2), (2) Plaintiff's motion is not brought in bad faith, will not cause undue

3    delay, and will not prejudice the opposing party, and (3) the supplemental claim does not

4    add any new facts not already contained in the SAC, the Court grants the motion.

5    Plaintiff's third claim, asserting a First Amendment right regarding legal mail, will be

6    incorporated with the SAC.

7         Prisoners have a First Amendment right to send and receive mail. *Witherow v.*

8    *Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Prisoners also have "a protected First Amendment

9    interest in having properly marked legal mail opened only in their presence." *Hayes v.*

10   *Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (explaining that "[w]hen a prisoner

11   receives confidential legal mail that has been opened and re-sealed, he may

12   understandably be wary of engaging in future communication about privileged legal

13   matters"); *see also Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (explaining that

14   "the practice of requiring an inmate to be present when his legal mail is opened is a

15   measure designed to *prevent* officials from reading the mail in the first place" (emphasis

16   in original)). However, prison officials may, consistent with the First Amendment, require

17   (1) that mail from attorneys be identified as such and (2) open such correspondence in

18   the presence of the prisoner for visual inspection. *Wolff v. McDonnell*, 418 U.S. 539, 576-

19   77 (1974). Additionally, "[m]ail from the courts, as contrasted to mail from a prisoner's

20   lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *opinion*

21   *amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). A prison need not treat all

22   mail sent to government agencies and officials as legal mail. *See O'Keefe v. Van*

23   *Boening*, 82 F.3d 322, 326 (9th Cir. 1996).

24        The Court finds that Plaintiff states a colorable First Amendment claim regarding

25   legal mail against Defendants Sergeant Rivera and Sergeant Bindley. First, based on the

26   allegations, Defendant Sergeant Bindley refused to put postage on a piece of Plaintiff's

27   outgoing legal mail even though Plaintiff followed CCDF's legal mail policy. Based on the

28   allegations, this refusal hindered Plaintiff's First Amendment right to send mail. Second,

1   based on the allegations, Defendant Sergeant Rivera delayed remailing a legal package

2   that had been returned due to lack of adequate postage, and opened Plaintiff's sealed

3   legal mail and gave it back to him inside a different envelope. Again, based on the

4   allegations, the former allegation frustrated Plaintiff's First Amendment right to send mail.

5   And the latter allegation, *i.e.*, that Plaintiff's protected mail was opened outside his

6   presence, is sufficient by itself to survive screening. *See Hayes*, 849 F.3d at 1212

7   (explaining that "[n]othing further is required" regarding screening a First Amendment

8   claim of legal mail other than a plausible allegation that the plaintiff's "protected mail was

9   arbitrarily or capriciously opened outside his presence").

10      However, the Court finds that Plaintiff fails to state a colorable First Amendment

11   claim regarding legal mail against Defendant Captain Mays. Regarding Plaintiff's

12   allegation that Defendant Sergeant Rivera delayed remailing a legal package that had

13   been returned due to lack of adequate postage, Plaintiff alleges that Defendant Captain

14   Mays is Defendant Sergeant Rivera's supervisor and is liable under a supervisor liability

15   theory. To state a valid § 1983 claim against a supervisor, "a plaintiff must plead that each

16   Government-official defendant, through the official's own individual actions, has violated

17   the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to allege what actions Defendant

18   Captain Mays took or did not take that violated Plaintiff's constitutional rights. Indeed,

19   Plaintiff does not allege, among other things, that Defendant Captain Mays had

20   knowledge of the delayed mailing, failed to train Defendant Sergeant Rivera in the

21   handling of mail, or instituted a policy that resulted in the delayed mail.

22      Plaintiff's First Amendment claim regarding legal mail will thus proceed against

23   Defendants Sergeant Rivera and Sergeant Bindley.

24   ///

25   ///

26   ///

27   ///

28   ///

12

1

**IV.    CONCLUSION**

2          It is therefore ordered that the motion for subpoena duces tecum and discovery

3   (ECF No. 25) is denied as premature.

4          It is further ordered that the motion for supplemental inclusion (ECF No. 24) is

5   granted.

6          It is further ordered that Clerk of Court file a Revised Second Amended Complaint

7   into one docket entry that consists of the SAC (ECF No. 23) and claim 3 from the

8   supplement (ECF No. 24 at 4–7). The Revised Second Amended Complaint is the

9   operative complaint, and the Clerk of Court is directed to send Plaintiff a courtesy copy of

10  it.

11         It is further ordered that Defendant Captain Mays is dismissed without prejudice

12  from the SAC.

13         It is further ordered that the Fourteenth Amendment claim for denial of access to

14  the courts is dismissed without prejudice.

15         It is further ordered that the First Amendment claim for retaliation will proceed

16  against Defendants Sergeant Rivera, commissary employee John Doe (when Plaintiff

17  learns of his identity), and Sergeant Bindley.

18         It is further ordered that the First Amendment claim regarding legal mail will

19  proceed against Defendants Sergeant Rivera and Sergeant Bindley.

20         It is further ordered that the Clerk of Court will issue summonses for Defendants

21  Sergeant Rivera and Sergeant Bindley and deliver the same to the U.S. Marshal for

22  service. The Clerk also will send sufficient copies of the Revised Second Amended

23  Complaint (ECF No. 23 plus ECF No. 24 at 4–7) and this order to the U.S. Marshal for

24  service on Defendants.

25         It is further ordered that the Clerk send to Plaintiff two USM-285 forms. Plaintiff will

26  have 30 days within which to give the U.S. Marshal the required USM-285 forms with

27  relevant information as to each Defendant on each form.

28

1   It is further ordered that within 20 days after receiving from the U.S. Marshal a copy

2   of the USM-285 forms showing whether service has been accomplished, Plaintiff must

3   file a notice with the Court identifying which Defendant(s) were served and which were

4   not served, if any. If Plaintiff wishes to have service again attempted on an unserved

5   Defendant(s), then a motion must be filed with the Court identifying the unserved

6   Defendant(s) and specifying a more detailed name and/or address for said Defendant(s),

7   or whether some other manner of service should be attempted.

8   It is further ordered that Plaintiff will serve upon Defendant(s)—or, if an appearance

9   has been entered by counsel, upon their attorney(s)—a copy of every pleading, motion,

10   or other document submitted for consideration by the Court. If Plaintiff electronically files

11   a document with the Court's electronic-filing system, no certificate of service is

12   required. Fed. R. Civ. P. 5(d)(1)(B); LR IC 4-1(b); LR 5-1. However, if Plaintiff mails the

13   document to the Court, Plaintiff shall include with the original document submitted for filing

14   a certificate stating the date that a true and correct copy of the document was mailed to

15   the Defendants or counsel for the Defendants. If counsel has entered a notice of

16   appearance, Plaintiff shall direct service to the individual attorney named in the notice of

17   appearance, at the physical or electronic address stated therein. The Court may disregard

18   any document received by a district judge or magistrate judge which has not been filed

19   with the Clerk, and any document received by a district judge, magistrate judge, or the

20   Clerk that fails to include a certificate showing proper service when required.

21   DATED THIS 13th Day of April 2023.

22

23   _____

24   MIRANDA M. DU
     CHIEF UNITED STATES DISTRICT JUDGE

25

26

27

28

14